Filed 5/30/14  Nickel v. ARB, Inc. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RACHEL NICKEL, | |
| Plaintiff and Appellant, | G048500 |
| v. | (Super. Ct. No. 30-2012-00553946) |
| ARB, INC., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Derek W. Hunt, Judge.  Affirmed.

The Schlehr Law Firm, Sarah B. Schlehr, Richard S. McGuire and Morgan E. Ricketts for Plaintiff and Appellant.

Jackson Lewis, Jared L. Bryan, Andrew J. Jaramillo and Matt S. D'Abusco for Defendant and Respondent.

\*                 \*                 \*

In this appeal, plaintiff and appellant Rachel Nickel contends the amount of attorney fees and costs the court awarded to her pursuant to the parties' stipulated judgment was too small. She has not met her burden to show error. We affirm.

I

FACTS

Nickel filed a pregnancy and sex discrimination lawsuit against ARB, Inc. Later that year, she made a Code of Civil Procedure section 998 offer to compromise. She offered to settle her claims for "$100,000.00 plus attorneys' fees and costs, in an amount to be determined by the Court." ARB, Inc. accepted the offer.

The court entered a stipulated judgment in favor of Nickel. It ordered "that Plaintiff Rachel Nickel shall recover $100,000.00 from Defendant ARB, Inc. together with Plaintiff's costs and attorneys fees, the amount of which shall be later determined by the Court."

Nickel filed a March 29, 2013 motion wherein she sought $93,421.50 in attorney fees and $7,609.19 in costs. ARB, Inc. opposed the motion, arguing that the attorney fee award should not exceed $44,956.00.

In its minute order, the court stated: "The cause having been briefed, argued, and taken under submission, the court now rules as follows: (a) motion for attorney fees granted in the total sum of $30,000.00; *Serrano v. Priest* (1977) 20 [Cal]. 3d 25; (b) the court declines to award costs in addition to those sought under the Memorandum of Costs and Disbursements filed February 13, 2013."

Nickel appeals.

II

DISCUSSION

A. *Standard of Review:*

"A trial court's exercise of discretion concerning an award of attorney fees will not be reversed unless there is a manifest abuse of discretion. [Citation.] '"The

2

'experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong[']—meaning that it abused its discretion. [Citations.]'" [Citations.] Accordingly, there is no question our review must be highly deferential to the views of the trial court. [Citation.]" (*Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1239.)

"At the same time, discretion must not be exercised whimsically, and reversal is appropriate where there is no reasonable basis for the ruling or the trial court has applied 'the wrong test' or standard in reaching its result. [Citation.] '"The scope of discretion always resides in the particular law being applied, i.e., in the 'legal principles governing the subject of [the] action . . . .' Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an 'abuse' of discretion."' [Citations.] Thus, in attorney fee determinations such as this one, the exercise of the trial court's discretion 'must be based on a proper utilization of the lodestar adjustment method, both to determine the lodestar figure and to analyze the factors that might justify application of a multiplier.' [Citation.]" (*Nichols v. City of Taft*, *supra*, 155 Cal.App.4th at pp. 1239-1240.)


*B. Application of Erroneous Standard:*

Nickel claims that the court, in failing to utilize the lodestar method to determine the amount of the attorneys fee award, applied the wrong legal standard and that, therefore, this court must perform a de novo review. She emphasizes that *Serrano v. Priest* (1977) 20 Cal.3d 25 and subsequent cases require that attorney fee awards should be determined in accordance with the lodestar method. Even though the court, in issuing its minute order, cited *Serrano v. Priest*, *supra*, 20 Cal.3d 25 in support of its determination, Nickel says the court plainly did not use the lodestar method as required by that case.

3

The Supreme Court in *Ketchum v. Moses* (2001) 24 Cal.4th 1122 explained:  "Under *Serrano* [*v. Priest*, *supra*, 20 Cal.3d 25], a court assessing attorney fees begins with a . . . lodestar figure, based on the 'careful compilation of the time spent and reasonable hourly compensation of each attorney . . . involved in the presentation of the case.'  [Citation.]  We expressly approved the use of prevailing hourly rates as a basis for the lodestar . . . .  [Citation.]"  (*Ketchum v. Moses*, *supra*, 24 Cal.4th at pp. 1131-1132.)  "Under *Serrano* . . . , the lodestar is the basic fee for comparable legal services in the community; it may be adjusted by the court based on factors including, as relevant herein, (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award.  [Citation.]  The purpose of such adjustment is to fix a fee at the fair market value for the particular action.  In effect, the court determines, retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services." (*Id.* at p. 1132.)

Nickel maintains that the court, which made no findings of fact, failed to determine either reasonable billing rates for the attorneys involved or the number of hours reasonably spent on the case, and failed to consider enhancement factors.  Consequently, she argues, even though the court cited *Serrano v. Priest*, *supra*, 20 Cal.3d 25 in its minute order, it obviously did not follow that case.

She cites no case for the authority that the court was required to make findings of fact or that because it made no findings of fact we should presume that it applied the wrong standard in the determination of its award.  As case law readily shows, the court was not required to make such findings and we make no such presumption.  "The superior court was not required to issue a statement of decision with regard to the fee award.  [Citation.]"  (*Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1140; *Pellegrino v.*

4

*Robert Half Internat., Inc.* (2010) 182 Cal.App.4th 278, 289-290.)  Moreover, there is no indication that Nickel requested a statement of decision.  Consequently, "'"[a]ll intendments and presumptions are indulged to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown."'  [Citation.]" (*Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1140; *Pellegrino v. Robert Half Internat., Inc.*, *supra*, 182 Cal.App.4th at pp. 289-290.)  Here, we presume that the court used the lodestar method required under *Serrano v. Priest*, *supra*, 20 Cal.3d 25, just as it indicated it did.

Nickel says that comments the court made at oral argument on the motion for attorney fees shows that it did not intend to utilize the lodestar method.  The court commented that Nickel and her attorneys had a contingency fee agreement, so that the legal fees *she* agreed to pay "were not to be based upon the lodestar method; meaning a specified hourly rate multiplied by the time spent."  The court also expressed some dismay at the minimal and nonspecific way in which the attorney fees provision of the settlement agreement had been drafted.  It said:  "What's unusual about this agreement which is before me is the completely unspecific language in the agreement about attorney fees.  By that, I mean it doesn't even specify how those attorney fees are supposed to be calculated.  The entire subject is addressed in a single complete, unspecific sentence in the stipulated judgment . . . ."

The court then noted that Nickel was suggesting that it should construe the settlement agreement as an agreement that she could recover more than the amount of the contingency percentage she agreed to pay her attorneys.  It further commented on some general principles applicable in attorney fees matters and ultimately concluded:  ". . . I believe the parties' stipulation such as it was . . . amounts to an agreement between them that the trial judge, meaning me, should simply exercise my discretion to select a reasonable attorney fee award."  Nickel says this shows the trial court applied an

5

erroneous legal standard—simply any fee award the court in its personal discretion felt to be reasonable, not a fee determined by application of the lodestar method.

However, Nickel omits to mention the very next words the court uttered: "As I see it, the operative considerations under those circumstances are *such things as* the complexity of the case, the efforts that had to be made by the lawyer before their final outcome, and my experience . . . ." (Italics added.) In other words, the court both identified some of the lodestar factors to be applied, and indicated that it was taking the time to mention only a few of them.

Again, inasmuch as there is no statement of decision and all presumptions are indulged to support the award, we presume the court did exactly what it said it did in its minute order, and used the lodestar method required under *Serrano v. Priest*, *supra*, 20 Cal.3d 25. The court's comments at oral argument do not show that it intended to do otherwise and, in any event, we "refrain from using the court's oral comments during the hearing to impeach the final attorney fees award." (*Pellegrino v. Robert Half Internat., Inc.*, *supra*, 182 Cal.App.4th at p. 294.)


C. *Abuse of Discretion:*

Nickel reiterates the foregoing arguments and says the court abused its discretion by applying the wrong legal standard. However, we have already held that Nickel failed to show the court applied the wrong legal standard.

Nickel also she says the court abused its discretion because it failed to award compensation for all hours reasonably spent. She states that she requested lodestar fees of $62,281 in her motion, which she increased to $73,491 at the hearing on the motion. She emphasizes that these figures were "not invented out of thin air." Nickel says they were based on: (1) 69.8 hours for Attorney Sarah B. Schlehr times $500 per hour; (2) 77.37 hours for Attorney Hilary Rau times $300 per hour; (3) 13.9 hours for Attorney Citadelle Priagula times $300 per hour; and (4) "[a]dditional time spent on the

6

motion, reply and hearing," bringing the lodestar to $73,491. She complained that the $30,000 court award compensated the attorneys at the rate of only $158 per hour, for the total number of hours worked.

Nickel, citing *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, contends that the court abused its discretion in failing to make the award fully compensatory. The *Horsford* court observed: "In order to be effective in accomplishing the legislative purpose of assuring the availability of counsel to bring meritorious actions under FEHA, the goal of an award of attorney fees 'is to fix a fee at the fair market value for the particular action.' [Citation.] '[F]ee awards should be fully compensatory.' [Citation.]" (*Id.* at p. 394.)

However, the court in *Horsford v. Board of Trustees of California State University*, *supra*, 132 Cal.App.4th 359 further stated: "While the trial court has discretion to increase or decrease the ultimate award in order to effectuate the purposes of FEHA and to ensure a fair and just result, the court is required to begin by determining '*all* the hours *reasonably spent*' and multiplying that total by 'the hourly prevailing rate for private attorneys in the community conducting *noncontingent* litigation of the same type.' [Citation.]" (*Id.* at p. 394.)

So, the court was not required to award Nickel a fee award equal to the number of hours her attorneys worked times their billing rates. Rather, it needed to determine the number of hours *reasonably spent*, which may have been fewer than the number actually spent, and to multiply that figure by the *prevailing hourly rate*, which may have been less than the attorneys' billing rates. It then had the discretion to either increase *or decrease* the resulting amount. We do not know the number of hours the court determined to have been reasonably spent or the amount it determined to be the prevailing hourly rate. We further do not know if the court adjusted the resulting figures in its discretion. However, as we have stated, we indulge all intendments and presumptions to support the award. (*Ketchum v. Moses*, *supra*, 24 Cal.4th at p. 1140.)

7

Continuing on, Nickel says the court abused its discretion in failing to apply a fee enhancement to the basic lodestar figure based on (1) a contingent risk factor in the FEHA context, (2) a successful result, and (3) the public interest in eliminating workplace discrimination. In support of this assertion, she again cites the Fifth District's opinion in *Horsford v. Board of Trustees of California State University*, *supra*, 132 Cal.App.4th 359, wherein the court stated "the contingent and deferred nature of the fee award in a civil rights or other case with statutory attorney fees *requires* that the fee be adjusted in some manner to reflect the fact that the fair market value of legal services provided on that basis is greater than the equivalent noncontingent hourly rate. [Citation.]" (*Id.* at pp. 394-395, italics added.)

The foregoing quotation notwithstanding, the Supreme Court in *Ketchum v. Moses*, *supra*, 24 Cal.4th 1122 made clear that "the trial court is not *required* to include a fee enhancement to the basic lodestar figure for contingent risk, exceptional skill, or other factors, although it retains discretion to do so in the appropriate case . . . ." (*Id.* at p. 1138, original italics.) As the Fifth District has stated more recently, "[a]lthough the *Ketchum* court explained in detail why a fee enhancement is reasonable in contingent cases [citation], it also held that the decision remains a matter within the trial court's sound discretion . . . ." (*Nichols v. City of Taft*, *supra*, 155 Cal.App.4th at p. 1241.) The Fifth District further stated: "We take it then as established principle that a trial court's decision whether to apply a multiplier is a discretionary one, as the Supreme Court's decision in *Ketchum* made clear. *Horsford* did not hold otherwise. Indeed, it expressly acknowledged that 'the trial court has *discretion* to increase or decrease the ultimate award in order to . . . ensure a fair and just result . . . .' [Citations.]" (*Ibid.*) We agree.

Moreover, we observe that, at the hearing on the attorney fees motion, the court made quite clear that it had read the parties' moving papers. We further observe that in opposition to the motion for attorney fees, ARB, Inc. argued, inter alia: (1) the case was a simple one; (2) there was very little risk involved in handling it; (3) Nickel's

8

attorneys did little to develop the facts and theories of the case and did not take one single deposition; (4) ARB, Inc. made the first Code of Civil Procedure section 998 motion, on the very same terms as Nickel thereafter made; (5) the billing rates were excessive; and (6) to award the fees requested would result in a windfall for the minimal amount of time spent on the case.

However, Nickel has not provided us with either the declarations in support of her motion or the declarations in support of ARB, Inc.'s opposition. In other words, we have no idea what evidence the trial court considered in reaching its decision.

"The [fee award] must be affirmed because the record provided by [appellant] is inadequate to conclude the trial court abused its discretion in determining the fee was reasonable. As the party challenging a fee award, [appellant] has an affirmative obligation to provide an adequate record so that we may assess whether the trial court abused its discretion. [Citations.] We cannot presume the trial court has erred. The Court of Appeal has held: '"A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent. . . ." [Citation.]' [Citations.]" (*Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal.App.4th 440, 447; accord, *Pellegrino v. Robert Half Internat., Inc.*, *supra*, 182 Cal.App.4th at pp. 289-290.)

So, we infer that the trial court in the matter before us found that: (1) the hours spent were not reasonable, (2) the billing rates were not reasonable, and/or (3) the lodestar figure should be adjusted downward for some reason. (*Vo v. Las Virgenes Municipal Water Dist.*, *supra*, 79 Cal.App.4th at p. 447.) In short, Nickel has given us no reason to conclude that the trial court abused its discretion in fixing the award of attorney fees.

*D.  Costs Award:*

Finally, Nickel contends the court erred in failing to award all the costs she sought.  In her motion, Nickel stated:  "Plaintiff incurred a total of $7,609.19 in litigation costs in this case, of which a portion have already been detailed in Plaintiff's February 7, 2013 memorandum of cost.  In addition, Plaintiff has incurred $3,000 in expert fees.  See Schlehr Decl. [¶] 15."

On appeal, Nickel has provided us with neither a copy of the February 7, 2013 memorandum of costs nor a copy of the Schlehr declaration.  Consequently, we have an inadequate record for review.[1]  (*Pellegrino v. Robert Half Internat., Inc.*, *supra*, 182 Cal.App.4th at pp. 289-290; *Vo v. Las Virgenes Municipal Water Dist.*, *supra*, 79 Cal.App.4th at p. 447.)

All we have is Nickel's assertion that she is entitled to recover all her fees based on Government Code section 12965, subdivision (b) and the parties' agreement.  Government Code section 12965, subdivision (b) provides in relevant part:  "In civil actions brought under this section, the court, in its discretion, may award to the prevailing party . . . reasonable attorney's fees and costs, including expert witness fees."  The section does not mandate that the court award to the prevailing party all the costs sought.

---

[1]    ARB, Inc. ought not think Nickel is the only party that needs a reminder about the rules of appellate procedure.  We suggest that ARB, Inc. review the rules on proper citation to the record on appeal.  (Cal. Rules of Court, rule 8.204(a)(1)(C), (e).)  It has cited to "Clerk's Transcript" Nos. 3 and 10-13, none of which appear in the record, which consists of a single-volume clerk's transcript and a single-volume reporter's transcript.  Even if we were to construe the citations as being to item Nos. 3 and 10-13 in the clerk's transcript, the citations would make no sense.  Furthermore, ARB, Inc. has not even attempted to provide one single pinpoint page reference within the various "Clerk's Transcripts" it has cited.  (*Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 165-167 [pinpoint page references required; sanctions available for rules violations]; *Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761, 768 [arguments may be deemed waived for failure to provide record references].) Fortunately for ARB, Inc., it did not have the burden to show error.

Furthermore, the parties' agreement provided that the lawsuit was settled for "$100,000.00 plus attorneys' fees and costs, in an amount to be determined by the Court." It did not provide that the court was required to award costs in whatever amount Nickel sought. It left the amount of the award to the court's discretion and Nickel has given us no basis on which to conclude that the court erred in exercising its discretion in the manner it did.

## III

## DISPOSITION

The order is affirmed. Respondent shall recover its costs on appeal.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


RYLAARSDAM, J.

11